UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOSEPH N. RIDGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-00838-MJD-JMS |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON JUDICIAL REVIEW**

Joseph N. Ridge ("Ridge") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3)(A). For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

I. **Background**

Ridge filed applications for DIB and SSI on October 15, 2013, alleging an onset of disability date of September 1, 2013. [Dkt. 16-2 at 16.] Ridge alleges disability due to congenital deformity of non-dominant left hand and arm, history of polysubstance dependence, depression, and personality disorder.[1] [Dkt. 16-2 at 19.] Ridge's application was initially denied on January 7, 2014, and denied again on February 27, 2014, upon reconsideration. [Dkt. 16-2 at 14.] Ridge timely filed a written request for a hearing, which was held on March 7, 2014, before Administrative Law Judge James R. Norris. ("ALJ"). *Id*. The ALJ issued a decision on August

---

[1] Ridge and the Commissioner recited the relevant factual and medical background in more detail in their opening briefs. [*See* Dkt. 21 and Dkt. 23.] Because these facts involve Ridge's confidential and otherwise sensitive medical information, the Court will incorporate by reference the factual background in the parties' briefs but will articulate specific facts as needed below.

1

25, 2015, again denying Ridge's applications for SSI. [Dkt. 16-2 at 13.] On January 23, 2017, the Appeals Council denied Ridge's request for review, making the ALJ's decision the final decision for purposes of judicial review. [Dkt. 16-2 at 2.] Ridge timely filed his Complaint with this Court on March 20, 2017, which Complaint is now before the Court.

**II.      Legal Standard**

To be eligible for DIB or SSI, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three and he is able to perform his past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three and cannot perform his past relevant work but he can perform certain other available work, he is not disabled. 20 C.F.R. § 404.1520. Before proceeding from step three to step four, the

---

[2] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for Disability Insurance Benefits and Supplemental Security Income claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provisions as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

2

ALJ must assess the claimant's residual functional capacity (RFC), identifying the claimant's functional limitations and assessing the claimant's remaining capacity for work-related activities. S.S.R. 96-8p.

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This Court may not reweigh the evidence or substitute its judgment for that of the ALJ but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (citing *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985); *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984)). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). To be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into his reasoning" and "build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

### III. The ALJ's Decision

The ALJ first determined that Ridge has not engaged in substantial gainful activity since September 1, 2013, the alleged onset date. [Dkt. 16-2 at 19.] At step two, the ALJ determined that Ridge "has the following severe impairments: Congenital Deformity of Non-Dominant Left Hand and Arm, History of Polysubstance Dependence, Depression, and Personality Disorder."

3

*Id.* The ALJ found that Ridge's mental impairments, including the substance abuse disorder, meet Listings 12.04, 12.08, and 12.09. However, the ALJ also found that without substance abuse Ridge's impairments would continue to be severe, but the impairments or combination of impairments would no longer meet the Listings. [Dkt. 16-2 at 20.]

The ALJ next analyzed Plaintiff's residual functional capacity ("RFC") in the absence of substance abuse. He concluded that Plaintiff had the RFC to perform the following:

> [L]ift and/or carry 20 pounds occasionally and 10 pounds frequently, sit for 2 hours at a time for a total of 6 hours in an 8-hour day, stand for 1 hour at a time for a total of 3 hours in an 8-hour workday, and walk for 1 hour at a time for a total of 3 hours in an 8-hour workday. The claimant has no limits on the use of his dominant right upper extremity. As for his non-dominant left upper extremity, however, the claimant is limited to occasional overhead reaching, pushing/pulling, and reaching in all directions. With the left upper extremity, the claimant can never handle, finger, or feel. He can also engage in only slight grasping with the left upper extremity. The claimant can frequently use foot controls and climb stairs, but can never climb ladders, ropes or scaffolds. The claimant can frequently kneel and stoop. He can occasionally crouch and crawl. The claimant cannot tolerate any exposure to dangerous heights but can frequently work around moving mechanical parts. The claimant can perform no commercial driving. He can occasionally tolerate extreme temperature. As for his mental limitations, the claimant is limited to work requiring only occasional contact with supervisors, coworkers, and the general public.

In finding these limitations, the ALJ considered Ridge's "symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." [Dkt. 16-2 at 22.] The ALJ then acknowledged that the evidence suggested some level of mental impairment; however, the extent of limitation is "difficult to gauge because of the claimant's consistent embellishment in his attempt to manipulate the disability process by obtaining favorable medical records." [Dkt. 16-2 at 27.]

4

At step four, the ALJ concluded the Plaintiff is unable to perform any past relevant work. [Dkt. 16-2 at 29.] The ALJ thus proceeded to step five, at which time he received testimony from the vocational expert indicating that someone with Plaintiff's education, work experience, age, and RFC would be able to perform occupations such as office machine operator or mail clerk. Because these jobs existed in significant numbers in the national economy, the ALJ concluded that Plaintiff was not disabled. [Dkt. 16-2 at 31.]

IV.     **Discussion**

As substance abuse plays a significant role in this case, the Court begins its analysis by noting the Commissioner's stance on the impact of substance abuse on a finding of disability. The Social Security Act provides that disability insurance benefits may not be awarded to any person whose alcoholism or drug addiction is a material factor contributing to the finding of disability. 42 U.S.C. § 423(d)(2)(C). The regulations require a two-step analysis to answer the question of whether the claimant would still be disabled in the absence of his substance abuse. First, the ALJ must determine whether the claimant is disabled without segregating out any effects that may be due to substance abuse. *Mayes v. Astrue,* 2008 WL 126691 at *6 (S.D. Ind. Jan. 10, 2008). In this case, the ALJ found Ridge's mental impairments to be disabling when considering all of the symptoms related to his drug addiction. Specifically, the ALJ found Ridge satisfied the criteria of listings 12.04 (Depressive and Bipolar related disorders) and 12.08 (Personality and Impulse-control related disorders), including the paragraph B criteria with marked restriction of activities of daily living, marked difficulties in social functioning, and mild difficulties with concentration, persistence or pace. [Dkt. 16-2 at 19-20.]

The ALJ must then evaluate which limitations would remain in the absence of the substance abuse and whether those limitations would continue to be disabling. *Kangail v.*

*Barnhart*, 454 F.3d 627, 628 (7th Cir. 2006). Here the ALJ determined Ridge would continue to have marked difficulties in social functioning and mild difficulties with concentration, persistence, or pace. However, the ALJ found Ridge would only have a moderate restriction in activities of daily living (as opposed to marked) in the absence of substance abuse. [Dkt. 16-2 at 20-21.] Because the remaining limitations would not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the ALJ found the paragraph B criteria of the listings would not be satisfied in the absence of Ridge's substance abuse.

Ridge asserts the ALJ committed multiple errors in his analysis that require remand: (1) the ALJ's "perfunctory" step three analysis erroneously found Ridge had no episodes of decompensation of extended duration; (2) the ALJ erroneously found Ridge had only mild limitations in concentration, persistence, and pace, or, in the alternative, failed to properly account for those mild limitations in the RFC; and (3) the ALJ's adverse credibility determination was "patently wrong."

### A. Episodes of Decompensation at Step Three

Ridge was hospitalized five times in 2013 and 2014, yet the ALJ found he had no episodes of decompensation. Ridge asserts this is reversible error. On its face, the omission appears troublesome. If the ALJ had determined Ridge to have had repeated episodes of decompensation, that determination together with a marked limitation in social functioning would satisfy the paragraph B criteria for listings 12.04 and 12.08 and render Ridge disabled. Ridge notes he was hospitalized and placed under observation in a padded cell while incarcerated due to his psychotic symptoms. The ALJ made "no effort," Ridge argues, to address these psychiatric events when he found Ridge had no episodes of decompensation. [Dkt. 21 at 17.] An

6

examination of the ALJ's decision and the underlying medical records, however, paints a different picture.

An "episode of decompensation" is defined as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. Pt. 404, Subpart P., App. 1, § 12.00. An episode of decompensation typically consists of a hospitalization or placement in a halfway house, but it also "may be inferred from medical records showing a significant alteration in medication." *Larson v. Astrue*, 615 F.3d 744, 750 (7th Cir. 2010). Although the regulations define "repeated episodes of decompensation" as three episodes within one year or an average of one every four months (each lasting for at least two weeks), the regulations also state that for claimants who experience more frequent episodes of shorter duration, the ALJ should determine if the duration and the functional effects are of equal severity. *Id.*

Ridge was hospitalized and placed in medical observation at the jail on several occasions after exhibiting symptoms of psychosis such as extreme belligerence, claims of hallucinations, and even catatonic-like symptoms where he appeared unable to move. However, as the ALJ noted, in each instance the medical records reflected skepticism and concerns about malingering by those providing care for Ridge. A day after Ridge was admitted to the hospital in September 2013 incontinent, unresponsive and unable to feed himself, a prison guard noted that Ridge "got his own drink when he didn't think [the guard] was looking." [Dkt. 16-11 at 34.] Hospital staff noted that "it has yet to be determined if patient has any true medical or mental health issues or if his symptoms are behavioral in nature to avoid consequences of his behavior (jail/court/prison)." [Dkt. 16-8 at 54.] A subsequent evaluation by psychologist Dr. Fortner at Riverview Hospital

7

determined Ridge's symptoms were "of a behavioral nature and not psychosis and did not warrant acute hospitalizations or commitment." [Dkt. 16-9 at 7.] Another psychologist noted near the same time that Ridge was "willfully choosing not to function" and that he "shows no medical reason for his symptoms." [Dkt. 16-8 at 54.]

In January 2014 Ridge was again admitted to the hospital asserting he was unable to move. Days later, to the surprise of the hospital staff, Ridge simply stood up and walked to the bathroom by himself. [Dkt. 16-12 at 7.] "It was a shocking view for everybody," noted Dr. Mahmoud Yassin-Kassab, who further commented that Ridge "admitted that he is looking for Social Security Disability and he asked us to help with doing a functional capacity evaluation." *Id*.

After discussing these hospitalizations, the ALJ concluded: "The claimant's willingness to present his symptoms in a dishonest manner before doctors who are attempting to alleviate his reported symptoms suggests that the claimant is less concerned with his alleged symptoms than with obtaining disability benefits. While the evidence does suggest that the claimant does experience mental health issues, the extent of such issues cannot properly be determined due to the claimant's own conduct." [Dkt. 16-1 at 26.]

The ALJ next discussed and assessed great weight to Ridge's two mental status examinations, neither of which found Ridge's hospitalizations to constitute episodes of decompensation. [Dkt. 16-2 at 28.] Finally, the ALJ heard testimony at the hearing from Dr. Brooks, a psychologist who reviewed Ridge's medical records. Dr. Brooks testified: "[T]his is more of a chronic situation. . . . it's not a matter of decompensations." [Dkt. 16-2 at 47.] Contrary to Ridge's assertions, the ALJ's step three analysis was neither perfunctory nor lacking

in evidentiary basis. The Court finds that the ALJ's conclusion that Ridge did not suffer from episodes of decompensation is supported by substantial evidence.

### B. Concentration, Persistence, or Pace

Ridge next asserts the ALJ erroneously found Ridge had only mild limitations in concentration, persistence, or pace ("CPP"), or, in the alternative, failed to properly account for those mild limitations in the RFC. Neither argument is persuasive. Ridge asserts the hospitalization records are "highly suggestive of at least *some* difficulty with cognition and concentration secondary to psychotic and schizophrenic episodes." [Dkt. 21 at 25.] However, as discussed above, the episodes requiring hospitalization were determined to be the result of malingering and manipulation to aid in Ridge's quest for disability benefits and not true psychosis.

Even if the ALJ's assessment of mild limitations in CPP was proper, Ridge argues, the failure to include restrictions reflecting such mild limitations in the RFC constitutes reversible error. The only mental limitation imposed by the ALJ is "occasional contact with supervisors, coworkers, and the general public." [Dkt. 16-2 at 22.] This restriction reflects the recommendation of testifying medical expert Dr. Brooks, who opined that Ridge had marked difficulties in social functioning. Ridge asserts the restriction is inadequate, yet fails to identify any additional functional limitation that should have been included.[3] Instead, Ridge again recites evidence relating to his hospitalizations and declares the ALJ "simply took it upon himself to determine Plaintiff's severe psychological difficulties were attributable to his incarceration." [Dkt. 21 at 25-26.] To the contrary, the ALJ relied upon the opinions of several physicians who concluded Ridge's "psychotic" symptoms were deliberate, manipulative, and dishonest.

---

[3] For example, there is no evidence in the record that Ridge should be limited to unskilled tasks or would be unable to keep up with fast-paced work.

The ALJ fulfilled his duty here to devise an RFC supported by substantial evidence. Although the ALJ assessed "mild" limitations for CPP at step two, during the RFC analysis he gave great weight to a mental status examination by Dr. Robbins which concluded Ridge retained the ability to follow and remember simple instructions, make work-related decisions, and sustain concentration on simple tasks over a normal 8-hour workday. [Dkt. 16-10 at 93.] The ALJ further incorporated a limitation to address Ridge's marked difficulties in social functioning, the area deemed Ridge's primary source of limitation by testifying expert Dr. Brooks. Therefore, the Court finds the ALJ reasonably accounted for Ridge's mental impairments in the RFC.

### C. Credibility Determination

Ridge's argument that the ALJ's adverse credibility determination was patently wrong, while certainly creative, is equally unpersuasive. Ridge concedes he was non-compliant with his medications. He does not dispute the medical records are replete with references to malingering and blatant disability-seeking behaviors. Instead, Ridge asserts the ALJ and the Commissioner are "hyper-focused on this evidence which seemingly impugns Plaintiff's credibility" without considering his diagnoses of schizophrenia and psychosis. [Dkt. 26 at 8.] In effect, Ridge argues that his non-compliance and dishonesty with his medical providers are further symptoms of the mental illnesses for which he had been diagnosed. Ridge relies upon four medical records that allegedly confirm his "psychiatric condition." *Id*.

- A July 15, 2013, Mental Health Screening Interview completed by a social worker at the Hamilton County Jail upon incarceration. [Dkt. 16-7 at 15.] The clinician noted that Ridge "appears to be having visual and auditory hallucinations. Reports that Jesus control (sic) his every move. Presents no reality of being in the present. Appears schizophrenic."

- Admission records from Riverview Hospital dated September 3, 2013. [Dkt. 16-11 at 80-81.] Ridge was brought in from the jail unable to move or care for

himself. The attending physician noted "this may have an underlying psychotic etiology." *Id*.

- Notes from Aspire Health Services following a request for urgent intake from the Hamilton County Sheriff's Department on October 3, 2014. [Dkt. 16-16 at 111.] Ridge had been picked up by police outside the Hamilton County Courthouse "chanting, screaming" threatening to kill a judge and blow up the courthouse then removing his clothes. The record also indicates Ridge had filed a competency to stand trial petition on an unidentified charge. This record appears to have been created based upon a conversation with the arresting officer, not an evaluation of Ridge.

- An initial psychiatric evaluation by Community Health Network following the same incident on October 3, 2014. [Dkt. 16-14 at 67-75.] Dr. Fortner noted an admission diagnosis of psychosis and a medical history of schizophrenia. *Id*. Dr. Fortner also noted Ridge's preoccupation with obtaining a copy of his medical records.

Each of these records were created upon admission (into the hospital or into jail) and consist of the provider's initial observations of Ridge's behavior. They do not reflect the pattern identified by physicians over time wherein Ridge initially exhibited psychotic-like behavior followed by an unexplained "shocking" resolution and demand for medical records. The cited records likewise do not support the assertion that Ridge's behavior was the result of diagnosed psychosis or schizophrenia. When viewed as a whole, the medical record supports the ALJ's conclusion that Ridge persistently exaggerated his symptoms in order to obtain favorable medical records and receive disability benefits. [Dkt. 16-2 at 29.] It is only when the ALJ's credibility determination lacks any explanation or support that the court should declare it to be "patently wrong" requiring reversal. *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008). That is not the case here.

The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (citing § 405(g)). As the Seventh Circuit recently commented, "[A]lmost any conclusion an ALJ

11

reaches in such situations may be inconsistent with some evidence in the record and consistent with other evidence. This is where the substantial-evidence standard of review matters." *Kolar v. Berryhill*, 695 F. App'x 161, 162 (7th Cir. 2017). The ALJ's decision in this case is supported by substantial evidence and does not require remand.

## V. Conclusion

The standard for review of the Commissioner's denial of benefits is narrow. The Court reviews the record as a whole, but neither does it reweigh the evidence nor substitute its judgment for the ALJ's. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). The Court must uphold a decision where, as here, it is supported by substantial evidence in the record. As the Court cannot find a legal basis to overturn the ALJ's determination that Ridge does not qualify for disability benefits, the Commissioner's decision is **AFFIRMED**.

Dated: 9 JAN 2018

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Jill Z. Julian
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
jill.julian@usdoj.gov

Nicholas Thomas Lavella
KELLER & KELLER
nlavella@2keller.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov

Matthew Frederick Richter
KELLER & KELLER LLP
mrichter@2keller.com

Joseph R. Wambach
KELLER & KELLER
joew@2keller.com